# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: | OTN/LiveScan Number | Complaint/Incident Number |
|---|---|---|---|
| | | G 674423-1 | B-62-14 |
| Defendant Name | First MARIA | Middle P. | Last BONACCI |

## AFFIDAVIT of PROBABLE CAUSE

1. **WHEN:**
   a) Date when Affiant received information:
      02/18/2014
   b) Date when the source of information (Police Officers, Informant, Victim, Co-Defendant, Defendant, etc.) received information:

2. **HOW:**
   a) How Affiant knows this particular person commited crime: (personal observation, defendant's admissions, etc.):

   b) How the source of information knows this particular person committed the crime:

   c) How both Affiant and/or source of information knows that a particular crime has been commited:

3. **WHAT CRIMES:**
   18 3922 A1 THEFT BY DECEPTION

4. **WHERE CRIME(S) COMMITTED:**
   CITY OF PITTSBURGH

5. **WHY AFFIANT BELIEVES THE SOURCE OF INFORMATION:**
   X   Source is presumed reliable, i.e. other Police Officer, Eyewitness, Victim of Crime, etc.
   ___ Source has given information in the past which has led to arrest and/or conviction
   ___ Defendant's reputation for criminal activity
   ___ This source made declaration against his/her penal interest to the above offense
   X   Affiant and/or other Police Officers corroborated details of the information

# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: | OTN/LiveScan Number G 674423-1 | Complaint/Incident Number B-62-14 |
|---|---|---|---|
| Defendant Name | First: MARIA | Middle: P. | Last: BONACCI |

Your Affiant, Jackelyn Weibel, is a Detective with the Allegheny County District Attorney's Office and has been so for the past four years. Your Affiant is also holds a Masters Degree in Fraud and Forensics from Carlow University and is also a Certified Fraud Examiner (CFE). Your Affiant has assisted in the detection and prosecution of financial crime and political corruption cases for the Allegheny County District Attorney's Office for two years prior to becoming a Detective. As such, your Affiant has extensive experience in the investigation and prosecution of white collar crime and political corruption.

On Thursday, February 13, 2014, your Affiant traveled to the offices of The Pennsylvania Heart Group located on the Northside of Pittsburgh. Your Affiant met with two of the practice's owners, Dr. Michael Hagerty and Dr. Peter Stracci. They provided the following information:

The business has two locations: one on the Northside near Allegheny General Hospital and one in Clarion.

It was discovered that the practice was collecting less revenue than in previous years. They collected certain documents in an attempt to determine if all of the money that was collected was actually deposited into the business' bank account. Their analysis determined that over $100,000.00 of cash that was collected between 2007 and 2013 was not deposited into the practice's bank account.

When asked how cash enters the practice, your Affiant was told that when cash (normally in the form of patient co-payments) enters the business in either location, it is collected by front desk receptionist. The receptionist records the all cash and checks collected into a daily "log". The log and corresponding receipts are provided to employee, Maria Bonacci (the actor). The actor works in the Northside office.

The log and receipts for the Northside location are provided to the actor at the end of the business day and the Clarion location log and receipts are picked up by one of the doctors and brought to the actor twice a week.

The actor is responsible to create the daily deposit, enter it into the practice's QuickBooks accounting system and take the bank deposit to the bank. It was reported that the deposit is locked in a file cabinet in the actor's office until she can take it to the bank.

When asked, the doctors stated that there have not been any instances when the log and cash given to the actor from either location does not match.

The doctors also told your Affiant that on February 1, 2014, they implemented new internal controls for cash collection and processing which applied to the actor. On or around March 3, 2014, Dr. Hagerty contacted your Affiant to report that all cash collected in February had been deposited into the practice's bank account.

The doctors also provided your Affiant with a copy of the actor's payroll direct deposit form which shows her paycheck is deposited into an account held at First National Bank.

The doctors provided copies of the daily cash receipt logs and daily bank deposit slips from 2007 through 2013 to your Affiant. Your Affiant thereafter analyzed these documents by year and determined that the cash collected was more than the amount of cash deposited into the bank. The breakdown of the analysis is as follows:

| Year | Cash Collected | Cash Deposited | Cash Missing Per Year |
|---|---|---|---|
| 2007 | $12,984.94 | $8,152.39 | $4,832.55 |
| 2008 | $12,552.45 | $6,303.45 | $6,249.00 |
| 2009 | $18,047.78 | $3,794.44 | $14,253.34 |

**POLICE CRIMINAL COMPLAINT**

| Docket Number: | Date Filed: | OTN/LiveScan Number | Complaint/Incident Number |
|---|---|---|---|
| | | G 674423-1 | B-62-14 |
| Defendant Name | First: MARIA | Middle: P. | Last: BONACCI |

| | | | |
|---|---|---|---|
| 2010 | $22,181.30 | $3,897.50 | $18,283.80 |
| 2011 | $22,492.91 | $3,503.14 | $18,989.77 |
| 2012 | $23,799.01 | $3,507.07 | $20,291.94 |
| 2013 | $26,249.65 | $2,631.20 | $23,618.45 |
| | $138,308.04 | $31,789.19 | $106,518.85 |

Your Affiant received copies of the actor's First National Bank account records via a valid search warrant. Your Affiant reviewed the records and determined that from 2011 through 2013, $8,481.00 of cash (in even dollar rounded dollar amounts) had been deposited into the actor's bank account.

On Wednesday, March 26, 2014, your Affiant along with District Attorney Investigations Unit detective Kevin Flanigan traveled to the offices of The Pennsylvania Heart Group unannounced to interview the actor. The actor was advised that this was a voluntary interview and she could stop answering questions or leave at any time. She provided the following information:

Her title is medical transcriptionist. Many years ago, the doctors asked her to also complete accounting tasks as part of her daily responsibilities. She has been employed with the company for over 20 years.

Cash receipts come into the practice as "ACH deposits" directly into the practice's bank account (for larger insurers), through the mail and to the receptionists at both locations (Northside and Clarion).

At both locations, cash that is collected is recorded by the receptionist into a "log". The cash from both locations is double counted (by the actor and a second person) and compared to the "log" daily for the Northside location and twice a week for the Clarion location. A doctor travels to the Clarion office twice a week, picks up the log and cash receipts and thereafter delivers them to the actor.

The actor reported the cash she collected always matchd the log for both locations.

A copy of the log to their 3rd party billing company (Medical Services Associates) who thereafter applies the payments to the patient accounts.

The actor explained that she takes possession of the cash and locks it in her file cabinet until she can make the bank deposit the following business day. When asked, she stated that she (and no one else) prepares the deposit and takes it to the bank. The actor explained that when she was on vacation, the cash and checks were left for her to deposit when she returned.

The actor was told that the total cash received by the practice and recorded on the logs was compared to the actual cash deposited from 2007-2013. This comparison discovered that some of the cash that was collected and recorded on the daily log had not been deposited into the practice's bank account.

The actor had no reasonable explanation as to why there was a $106,518.85 difference between the cash collected and the cash deposited into the bank account for the relevant time period.

She actor was asked what her sources of income were and she explained that her payroll from practice was direct deposited into her bank personal account. She stated she worked part time seasonal at a candy store and was paid by hard check. When asked, the actor denied any source of cash as income.

*J.M.*

# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: | OTN/LiveScan Number | Complaint/Incident Number |
|---|---|---|---|
| | | G 674423-1 | B-62-14 |
| Defendant Name: | First MARIA | Middle P. | Last BONACCI |

When asked the source of the $8,481.00 of cash that had been deposited in her personal bank account in 2011-2013; initially she stated that her father gave her $4,000.00 around Easter. The actor was then shown a spreadsheet of cash deposited into her bank account. There was no $4,000.00 or large cash deposit around Easter. She could not explain the source of these funds.

Your Affiant asserts that the records show that approximately $106,518.85 of cash collected by The Pennsylvania Heart Group was not deposited into their business bank account. Your Affiant asserts that the actor was the trusted employee of the practice who was responsible for creating the bank deposit and thereafter depositing the collected funds into the practice's bank account.

Under her own admissions, the actor stated that the cash receipt log and cash given to her was double counted and it always matched. She stated that she was the only employee who handled the cash after it was double counted; the only employee who entered the deposit into the QuickBooks accounting system and the only employee who took the bank deposit to the bank.

Your Affiant asserts that the actor was the only person at the practice who was in a position to misappropriate the $106,518.85 in cash for her personal benefit.

Your Affiant asserts that that probable cause exists for the issuance of process namely an arrest warrant for Maria Bonacci on the charge of Theft by Deception (18 Pa. C.S.A. Section 3922(a)(1)).

I, JACKELYN WEIBEL, BEING DULY SWORN ACCORDING TO THE LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

_Jackelyn Weibel_
(Signature of Affiant)

Sworn to me and subscribed before me this 8 day of APRIL, 2014.

4-8-14 Date

_____, Magisterial District Judge

My commission expires first Monday of January, 2016