## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIA BONACCI,<br>           **Plaintiff,**<br><br>        v.<br><br>YVONNE MAHER, MICHAEL F. HAGERTY,<br>PETER F. STRACCI, JACKELYN WEIBEL,<br>KEVIN FLANIGAN,<br>PENNSYLVANIA HEART GROUP, LTD., And<br>ALLEGHENY HEALTH NETWORK, INC.,<br>           **Defendants.** | )<br>)<br>)<br>)<br>)   **2:16-cv-771**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OPINION AND ORDER OF COURT

Now pending before the Court is are DEFENDANTS JACKELYN WEIBEL AND KEVIN FLANIGAN'S MOTION TO DISMISS AMENDED COMPLAINT (ECF No. 6), with brief in support; and the MOTION TO DISMISS OF DEFENDANTS MAHER, HAGERTY, STRACCI AND PENNSYLVANIA HEART GROUP, LTD (ECF No. 8), with brief in support. Plaintiff Maria Bonacci filed responses in opposition to both motions; Defendants Weibel and Flanigan filed a reply brief; Plaintiff filed a sur-reply brief; and the motions are ripe for disposition.

Factual and Procedural History

This case arises out of a fraud investigation and subsequent filing of criminal charges against Bonacci, a long-time employee of Defendant Pennsylvania Heart Group, Ltd. ("PHG").[1] Defendants Hagerty, Stracci and Maher are physician-owners of PHG. Defendants Weibel and Flanigan are detectives within the Allegheny County District Attorney's Office.

---

[1] The Amended Complaint avers that Allegheny Health Network, Inc. acquired PHG in January 2016. Plaintiff filed a notice of voluntary dismissal of Allegheny Health Network, Inc. on September 8, 2016.

Plaintiff's claims against Detectives Weibel and Flanigan are based on an Affidavit of Probable Cause to charge Bonacci with Theft by Deception ("Criminal Charge Affidavit") dated April 8, 2014, which Plaintiff's counsel filed as an errata at ECF No. 5.[2] "It is well settled that where a claim is predicated on a written instrument that is attached as an exhibit to the complaint, the written instrument will control and courts are not required to accept as true any contradictory allegations in the complaint." *ULC Oil & Gas Field Servs. v. EXCO Res. (PA), LLC*, 2014 WL 6607280, at *5 (W.D. Pa. Nov. 19, 2014) (citations omitted).

Bonacci began her employment at PHG in 1989 as a medical transcriptionist. In 2002, she was assigned the additional task of depositing cash co-payments from patients into the PHG bank account. The Amended Complaint avers that prior to February 2014, PHG had poor internal controls and procedures for handling these cash payments.

In February 2014, Maher initiated a complaint with the Allegheny County District Attorney's office, alleging that from 2007-2013 approximately $108,000 of these cash payments had been stolen. This amount was derived by comparing the amounts recorded in an internal payment log with the corresponding bank deposit receipts. On February 13, 2014, Detective Weibel met with Defendants Hagerty and Stracci. Plaintiff alleges that Hagerty and Stracci gave false or misleading information to Weibel in two respects: (1) that there had never been any discrepancy between the cash payments and the amounts recorded in the payment log, when they knew that these amounts were never reconciled prior to 2014; and (2) that Bonacci was the only employee who had access to the cash payments.

---

[2] Plaintiff's counsel inadvertently attached to the Amended Complaint a different Affidavit of Probable Cause, which was prepared by Weibel on March 10, 2014 to obtain a search warrant for Bonacci's bank records. The PHG Defendants discussed this exhibit extensively in their brief. Out of an abundance of caution, the Court will not consider this exhibit, even though its authenticity appears to be undisputed and it is relevant to the probable cause determination.

Inconsistently, the Amended Complaint alleges that Weibel did know that prior to February 2014, the cash payments were not reconciled with the payment log, the "double-counting" procedure[3] had not been followed, and cash payments were left unsecured and/or placed in a file cabinet with an accessible key for up to seven days such that numerous employees could have accessed them. Bonacci has not pled any details as to how Weibel obtained this information. As noted above, the Amended Complaint avers that the PHG Defendants failed to disclose it to her. Plaintiff alleges that Weibel intentionally omitted these facts from her Criminal Charge Affidavit.

After meeting with the PHG doctors on February 13, 2014, Weibel obtained a search warrant to examine Bonacci's bank records. Upon review, it appeared that from 2011-2013, over $8,000 had been deposited into Bonacci's account. On March 26, 2016, Weibel and Flanigan[4] traveled to PHG to conduct an unannounced interview of Bonacci. According to the Criminal Charge Affidavit, Bonacci initially stated that her father had given her $4,000 around Easter. When confronted with a list of the actual deposits (which had no such entry), Bonacci was unable to explain the source of these funds. Plaintiff now contends that if given time, she could have provided a valid explanation.

On April 8, 2014 Weibel prepared the Criminal Charge Affidavit, which asserted that there was probable cause to charge Bonacci with theft by deception in violation of 18 P.S. § 3922(a)(1). Plaintiff contends that the Criminal Charge Affidavit contained false and intentionally and/or recklessly misleading information in that it stated that cash "is" double-counted and compared to the payment log without explaining that this control did not go into

---

[3] The cash was counted by two employees and recorded on a payment log. *See* Amended Complaint ¶ 23.
[4] This fact is gleaned from the charge. The Amended Complaint contains no specific facts regarding Flanigan's actions.

effect until 2014.[5]  Similarly, the charge stated that Bonacci had reported that the cash she

collected "always matched the log for both locations"; and "takes possession of the cash and

locks it in her file cabinet until she can make the bank deposit" without clarifying that these

controls also began in February 2014.

In ¶ 41 of the Amended Complaint, Plaintiff alleges that Weibel intentionally omitted the

fact that after the double-counting procedure went into effect, no further theft occurred.  The

Court cannot accept this averment because it is contrary to the four corners of the Criminal

Charge Affidavit.  In discussing the implementation of new controls, the Criminal Charge

Affidavit states:  "On or around March 3, 2014, Dr. Hagerty contacted your Affiant to report that

all cash collected in February had been deposited into the practice's bank account."  Thus, this

fact was not omitted by Weibel and the Court does not accept ¶ 41.

The Amended Complaint asserts claims against Weibel and Flanigan for malicious

prosecution and false arrest under the Fourth Amendment of the United States Constitution, and

against the PHG Defendants for common law malicious prosecution and intentional infliction of

emotional distress.


Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a

complaint, which may be dismissed for the "failure to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6)  Upon review of a motion to dismiss, the Court must accept

all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor

---

[5] In an earlier paragraph of the charge, Weibel stated that the doctors told her "that on February 1, 2014 they
implemented new internal controls for cash collection and processing."  However, viewed in the light most
favorable to Plaintiff, the affidavit does not clearly explain that double-counting was one of these new controls
implemented in 2014.

of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States has made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine

whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me

6

accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

Legal Analysis

Defendants seek dismissal of the Amended Complaint in its entirety, with prejudice and without leave to amend. Plaintiff concedes that the false imprisonment claim must be dismissed because it is barred by the statute of limitations. However, Plaintiff contends that she has pled valid malicious prosecution and intentional infliction of emotional distress claims. The gravamen of her theory is that the PHG Defendants knowingly withheld material information from the investigating detectives and the detectives, in turn, knowingly or recklessly mis-stated and/or withheld material information from the Criminal Charge Affidavit.

To plead a cognizable malicious prosecution claim under Section 1983, a plaintiff must establish that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Kossler v. Crisanti,* 564 F.3d 181, 187 (3d Cir. 2009). A claim for malicious prosecution under Pennsylvania law requires proof of only the first four elements of a federal malicious prosecution claim. *Wilson v. City of Philadelphia,* 2016 WL 1392250, at *23 b. 33 (E.D. Pa. Apr. 8, 2016) (citing *Haefner v. Burkey,* 626 A.2d 519, 521 (1993)).

Malicious prosecution claims are unique in that a plaintiff is required to "plead a negative" - that is, that the defendant officer(s) initiated the charges <u>without</u> probable cause. It is well established that the requisite <u>lack</u> of probable cause is an essential element of the claim. Thus, Plaintiff is required to plead sufficient facts to make it plausible that the Defendant police officers lacked probable cause to file charges against her. *Wheeler v. Wheeler,* 2016 WL 231581, at \*2 (3d Cir. Jan. 20, 2016) (unpublished). Bald, conclusory averments that Defendants acted without probable cause will not suffice. *Id.* (affirming dismissal of malicious prosecution claims).

A. Claims Against Officers Weibel and Flanigan

The Amended Complaint contains no specific facts regarding Flanigan's actions, other than that he was a detective "who participated with Defendant Weibel." This conclusory statement falls far short of the *Twombly/Iqbal* standard. It is clear that Weibel alone signed the affidavit now being challenged by Bonacci. Accordingly, all claims against Flanigan will be **DISMISSED**.

In *Dempsey v. Bucknell Univ.*, 2016 WL 4434400, at \*6 (3d Cir. Aug. 22, 2016), the United States Court of Appeals for the Third Circuit recently explained the procedure that a police officer must follow to obtain a warrant based on probable cause:

> First, the officer swears to an affidavit containing a summary of the events that she believes give rise to probable cause. In doing so, the officer "is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." *Id*. at 790 (*quoting Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999)). Second, the officer presents the affidavit to a neutral magistrate, who conducts his own independent review of the evidence to determine whether it does, in fact, establish probable cause, and, if so, issues a warrant.

The Court emphasized that a complete and accurate affidavit is essential: "If, however, the officer does not provide the neutral magistrate with an accurate affidavit of probable cause, the protection afforded by the magistrate's review is lost; the magistrate will be unable to assess the circumstances for probable cause because he will not know what those circumstances actually are." *Id*. The Court explained that "where exigencies do not require an immediate arrest, that officers [must] undertake a careful investigation before making the serious decision to file a criminal complaint and that they include in the affidavit all information 'any reasonable person would know that a judge would want to know' in making a probable cause determination." *Id*.

If the reviewing court determines that there were reckless misrepresentations or omissions, it must "excise the offending inaccuracies and insert the facts recklessly omitted from the affidavit and assess whether the reconstructed affidavit would establish probable cause." *Id*. at 7. "When a court determines that information was asserted or omitted in an affidavit of probable cause with at least reckless disregard for the truth, it must perform a word-by-word reconstruction of the affidavit." *Id*. If the reconstructed affidavit would still support probable cause, then plaintiff's malicious prosecution claim must fail. *Id.*

The Court must undertake a three-step process. "First, we assess the evidence the plaintiff asserts was recklessly omitted from the affidavit. Next, we reconstruct an affidavit that includes any recklessly omitted information. And finally, we assess the materiality of the omitted information to the probable cause determination."

1. Recklessly Omitted

In determining whether information was recklessly omitted, the Court must exercise "scrupulous neutrality," rather than viewing the evidence in the light most favorable to the non-moving party. The Court looks at the information available to the officer at the time of the

9

affidavit, and the relevance of the omitted information. On one hand, the officer must enable the magistrate to decide independently whether probable cause exists; on the other hand, reviewing courts cannot practically require officers to relate the entire history of events leading up to the application. *Id*. at 8.[6]

In this case, at the motion to dismiss stage, the Court will accept Plaintiff's allegation that Weibel recklessly omitted information from the criminal charge document. Specifically, the Court will assume that Weibel recklessly omitted that the controls implemented in February 2014 (the double-counting of cash, comparison to the payment log and locking the cash in Bonacci's file cabinet) did not exist prior to 2014, such that persons other than Bonacci could have stolen the money. The Court will also assume that Weibel recklessly omitted that Bonacci's statement that the cash she collected "always matched the log for both locations" was limited to the period after these new controls began in February 2014.

    2.  Reconstruction

Typically, the reviewing court will reconstruct the affidavit to include the recklessly omitted information. In some cases, the court must include other information to provide context for the omitted information. *Id*. at 11.

The Court turns now to that word-for-word reconstruction, with the new information in **BOLD and ALLCAPS**:

> Your Affiant, Jackelyn Weibel, is a Detective with the Allegheny County District Attorney's Office and has been so for the past four years. Your Affiant also holds a Master's Degree in Fraud and Forensics from Carlow University and is also a Certified Fraud Examiner (CFE). Your Affiant has assisted in the detection and prosecution of financial crime and political corruption cases for the Allegheny County District Attorney's Officer for two years prior to

---

[6] Although not discussed in *Dempsey*, there is also an issue of whether a police officer's written work product should be held to the standard of clarity applicable to an attorney or judge. An affidavit that is poorly organized, vague, confusing or incomplete may not have been done "maliciously."

becoming a Detective. As such, your Affiant has extensive experience in the investigation and prosecution of white collar crime and political corruption.

On Thursday, February 13, 2014, your Affiant traveled to the offices of the Pennsylvania Heart Group located on the Northside of Pittsburgh. Your Affiant met with two of the practice's owners, Dr. Michael Hagerty and Dr. Peter Stracci. They provided the following information:

The business has two locations: one on the Northside near Allegheny General Hospital and one in Clarion.

It was discovered that the practice was collecting less revenue than in previous years. They collected certain documents in an attempt to determine if all of the money that was collected was actually deposited into the business' bank account. Their analysis determined that over $100,000 of cash that was collected between 2007 and 2013 was not deposited into the practice's bank account.

When asked how cash enters the practice, your Affiant was told that when cash (normally in the form of patient co-payments) enters the business in either location, it is collected by front desk receptionist. The receptionist records [ ] all cash and checks collected into a daily "log". The log and corresponding receipts are provided to employee, Maria Bonacci (the actor). The actor works in the Northside office.

The log and receipts for the Northside location are provided to the actor at the end of the business day and the Clarion location log and receipts are picked up by one of the doctors and brought to the actor twice a week.

The actor is responsible to create the daily deposit, enter it into the practice's QuickBooks accounting system and take the bank deposit to the bank. It was reported that the deposit is locked in a file cabinet in the actor's office until she can take it to the bank.

When asked, the doctors stated that **SINCE THE IMPLEMENTATION OF NEW INTERNAL CONTROL PROCEDURES IN FEBRUARY 2014**, there have not been any instances when the log and cash given to the actor from either location does not match. **PRIOR TO FEBRUARY 2014, CASH PAYMENTS WERE NOT RECONCILED WITH THE PAYMENT LOG.**

The doctors also told your Affiant that on February 1, 2014, they implemented new internal controls for cash collection and processing which applied to the actor. On or around March 3, 2014, Dr. Hagerty contacted your Affiant to report that all cash collected in February had been deposited into the practice's bank account.

The doctors also provided your Affiant with a copy of the actor's payroll direct deposit form which shows her paycheck is deposited into an account held at First National Bank.

The doctors provided copies of the daily cash receipt logs and daily bank deposit slips from 2007 through 2013 to your Affiant. Your Affiant thereafter analyzed these documents by year and determined that the cash collected was more than the amount of cash deposited into the bank. The breakdown of the analysis is as follows:

Year /  Cash Collected/  Cash Deposited/  Cash Missing Per Year

| Year | Cash Collected | Cash Deposited | Cash Missing Per Year |
|------|---------------|---------------|----------------------|
| 2007 | $12,984.94 | $8,152.39 | $ 4,832.55 |
| 2008 | $12,552.45 | $6,303.45 | $ 6,249.00 |
| 2009 | $18,047.78 | $3,794.44 | $14,253.34 |
| 2010 | $22,181.30 | $3,897.50 | $18,283.80 |
| 2011 | $22,492.91 | $3,503.14 | $18,909.77 |

| 2012 | $23,799.01 | $3,507.07 | $20,291.94 |
| 2013 | $26,249.65 | $2,631.20 | $23,618.45 |
| | | | |
| | $138,308.04 | $31.789.19 | $106,518.85 |

Your Affiant received copies of the actor's First National Bank account records via a valid search warrant. Your Affiant reviewed the records and determined that from 2011 through 2013, $8,481.00 of cash (in even dollar rounded dollar amounts) had been deposited into the actor's bank account.

On Wednesday, March 26, 2014, your Affiant along with District Attorney Investigation Unit Detective Kevin Flanagan traveled to the offices of the Pennsylvania Heart Group unannounced to interview the actor. The actor was advised that this was a voluntary interview and she could stop answering questions or leave at any time. She provided the following information:

Her title is medical transcriptionist. Many years ago, the doctors asked her to also complete accounting tasks as part of her daily responsibilities. She has been employed with the company for over 20 years.

Cash receipts come into the practice as "ACH deposits" directly into the practice's bank account (for larger insurers), through the mail and to the receptionists at both locations (Northside and Clarion).

At both locations, cash that is collected is recorded by the receptionist into a "log". **UNDER THE NEW INTERNAL CONTROLS STARTED IN FEBRUARY 2014,** the cash from both locations is double counted (by the actor and a second person) and compared to the "log" daily for the Northside location and twice a week for the Clarion location. A doctor travels to the Clarion office twice a week, picks up the log and cash receipts and thereafter delivers them to the actor.

The actor reported the cash she collected **SINCE FEBRUARY 2014** always matched the log for both locations.

A copy of the log to their 3rd party billing company (Medical Services Associates) who thereafter applies the payments to the patient accounts.

The actor explained that **SINCE FEBRUARY 2014** she takes possession of the cash and locks it in her file cabinet until she can make the bank deposit the following business day. **PRIOR TO FEBRUARY 2014, INTERNAL CONTROLS WERE WEAK AND OTHER EMPLOYEES COULD HAVE HAD ACCESS TO THE CASH AND/OR TO THE KEY TO THE CABINET IN WHICH THE CASH WAS STORED.** When asked, she stated that she (and no one else) prepares the deposit and takes it to the bank. The actor explained that when she was on vacation, the cash and checks were left for her to deposit when she returned.

The actor was told that the total cash received by the practice and recorded on the logs was compared to the actual cash deposited from 2007-2013. This comparison discovered that some of the cash that was collected and recorded on the daily log had not been deposited into the practice's bank account.

The actor had no reasonable explanation as to why there was a $106,518.85 difference between the cash collected and the cash deposited into the bank account for the relevant time period.

The actor was asked what her sources of income were and she explained that her payroll from practice was direct deposited into her bank personal account. She stated she worked part time

seasonal at a candy store and was paid by hard check. When asked, the actor denied any source of cash as income.

When asked the source of the $8,481.00 of cash that had been deposited in her personal bank account in 2011-2013, initially she stated that her father gave her $4,000.00 around Easter. The actor was then shown a spreadsheet of cash deposited into her bank account. There was no $4,000.00 or large cash deposit around Easter. She could not explain the source of these funds.

Your Affiant asserts that the records show that approximately $106,518.85 of cash collected by The Pennsylvania Heart Group was not deposited into their business bank account. Your Affiant asserts that the actor was the trusted employee of the practice who was responsible for creating the bank deposit and thereafter depositing the collected funds into the practice's bank account.

Under her own admissions, the actor stated that **AFTER THE NEW INTERNAL CONTROLS BEGAN IN FEBRUARY 2014**, the cash receipt log and cash given to her was double counted and it always matched. She stated that she was the only employee who handled the cash after it was double counted; the only employee who entered the deposit in the Quick Books accounting system and the only employee who took the bank deposit to the bank.

Your Affiant asserts that ~~the actor was the only person~~ **PRIOR TO THE INTERNAL CONTROLS IMPLEMENTED IN FEBRUARY 2014, THERE WERE MULTIPLE EMPLOYEES, INCLUDING THE ACTOR,** at the practice who [**WERE**] in a position to misappropriate the $106,518.85 in cash for her personal benefit.

Your Affiant asserts that probable cause exists for the issuance of process, namely an arrest warrant for Maria Bonacci on the charge of Theft by Deception (18 Pa. C.S.A. Section 3922(a)(1)).

3.  Materiality

The Court then considers whether probable cause exists. In *Dempsey v. Bucknell Univ.*,

2016 WL 4434400, the Court emphasized that the standard is "merely a fair probability that the

arrestee committed a crime," such that the affidavit need not identify "the same type of specific

evidence of each element of [an] offense as would be needed to support a conviction." *Id*. at 14.

The existence of "some unreliability or exculpatory evidence will not fatally undermine[ ]

probable cause otherwise established." *Id*. In *Dempsey*, the Court concluded that "omitted

witness statements indicating that the interaction between [the students] was playful and, when it

was not playful, [the alleged victim] was the aggressor" did not destroy the existence of probable

cause. Thus, the Court determined that the malicious prosecution claims must fail.[7]

The Court now turns to a practical, common-sense analysis of whether the affidavit, as

reformulated, constitutes probable cause that Bonacci committed a crime based on the

information available to officers at the time the warrant was sought. *Estate of Smith v. Marasco*,

318 F.3d 497, 522 (3d Cir. 2003).

> [P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." While the question of probable cause is generally left to the jury, a court may conclude that probable cause exists as a matter of law "if the evidence, viewed most favorably to [the nonmoving party], reasonably would not support a contrary factual finding." "A 'common sense' approach [must be taken] to the issue of probable cause' and a determination as to its existence must be based on the 'totality of the circumstances.' "

*Goodwin v. Conway*, 2016 WL 4728004, at *4 (3d Cir. Sept. 12, 2016).

As an initial matter, an offense was clearly committed because somebody stole over

$100,000 from PHG. None of the evidence to which Bonacci points was plainly exculpatory.

*See Goodwin,* 2016 WL 4728004 at *5. The omitted facts do not prove that Bonacci did not

steal the money. Nor has Plaintiff pointed to any evidence that implicates any other person in the

thefts. At most, the omitted facts cited by Plaintiff's counsel merely indicate that because the

controls were weak some other employee <u>might</u> have had the ability to steal it. The facts remain

that these thefts were substantial (over $100,000); brazen (in most years, more than 80% of the

cash was stolen, rather than deposited); long-lasting (at least seven years); and nobody reported

the thefts. It was certainly reasonable for the investigating officers to believe that thefts of this

magnitude, regularity and longevity were committed by an employee. Bonacci was the

---

[7] The Court recognizes that *Dempsey* was decided at the summary judgment stage. However, its analysis is instructive at the motion to dismiss stage when the malicious prosecution claim is based on the four-corners of an affidavit or criminal charge document which has been reformulated to include the omitted information.

employee most intimately involved in the process for the entire time period. Moreover, the officers were able to confirm that Bonacci provided a false explanation for why $8,000 in cash had been deposited into her bank account.

It is important to note that to defeat a malicious prosecution claim, the officers need only satisfy "probable cause"; they need not develop evidence beyond a reasonable doubt. *See Harris v. Doe*, 2015 WL 4864904, at *4 (W.D. Pa. Aug. 13, 2015) (*citing United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir.2011)) (proof beyond a reasonable doubt is not required when making a probable cause determination). In summary, there was probable cause to charge Bonacci with Theft by Deception even if the internal controls prior to February 2014 were weak and even if all of the other employees had not been definitively excluded as possible suspects. Accordingly, the reconstructed affidavit supports probable cause and the malicious prosecution claims against officers Weibel and Flanigan must fail as a matter of law.

B. Claims Against PHG Defendants

Bonacci's malicious prosecution theory against the PHG Defendants is one step removed. Plaintiff argues that the manner in which the victims reported the theft to investigating officers constituted malicious prosecution. Specifically, Plaintiff contends that the PHG Defendants told Weibel that there had never been any discrepancy between the cash payments and the amounts recorded in the payment log, when they knew that these amounts were never reconciled prior to 2014; and that Bonacci was the only employee who had access to the cash payments.

As an initial matter, the Amended Complaint conclusorily avers that Maher provided false information to the detectives. This averment is contradicted by the actual Criminal Charge Affidavit (ECF No. 5), which states: "Your affiant met with two of the practice's owners, Dr.

15

Michael Hagerty and Dr. Peter Stracci. They provided the following information:" Thus, all claims against Maher must be **DISMISSED**.

The PHG Defendants contend that they cannot be held liable because Officer Weibel performed an independent investigation and that Officer Weibel then initiated the filing of criminal charges. As noted above, the first essential element of a malicious prosecution claim is that "defendant(s) initiated a criminal proceeding." Pennsylvania courts evaluate whether a defendant initiated proceedings pursuant to § 653, Comment g of the Restatement (Second) of Torts. *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 464 (3d Cir. 1993), *aff'd*, 60 F.3d 814 (3d Cir. 1995) *overruled on other grounds by Miller v. CIGNA Corp.*, 47 F.3d 586 (3d Cir. 1995). In relevant part, § 653, Comment g explains that the exercise of a police officer's discretion to file charges "makes the initiation of the prosecution [the officer's] own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings." Comment g distinguishes situations in which an individual demands prosecution from those in which the individual merely provides information and the police officer then conducts an independent investigation. Merely providing information regarding possible criminal activity is insufficient to be held liable for malicious prosecution. *Falat v. Cty. of Hunterdon*, 2014 WL 6611493, at *16 (D.N.J. Nov. 21, 2014). *See also* Prosser, <u>Law of Torts</u>, 836-37 (4th ed. 1971) ("If the defendant merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, . . . the [defendant] is not regarded as having instigated the proceeding.").

The facts as pled in the Amended Complaint reflect that the PHG Defendants merely provided information and officer Weibel then conducted an independent investigation. Doctors Haggerty and Stracci met with Weibel on February 13, 2014. Weibel then conducted an

investigation; obtained a search warrant for Bonacci's bank records; interviewed Bonacci; and then independently prepared the Criminal Charge Affidavit some two months after her meeting with the doctors.  It was officer Weibel who exercised her own independent discretion to initiate criminal charges.  Thus, the PHG Defendants cannot be held liable for malicious prosecution.

The tort of Intentional Infliction of Emotional Distress ("IIED") requires intentional, extreme and outrageous conduct on the part of the tortfeasor, which causes severe emotional distress to the plaintiff.  *See Hoy v. Angelone*, 720 A.2d 745, 754 (1998).  Courts are very reluctant to recognize IIED claims.  To be cognizable, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id*.  The Court has no difficulty in concluding that an IIED claim is not cognizable under the facts of this case.  There is no dispute that PHG was the victim of a substantial, long-lasting theft in which they lost over $100,000.  The alleged "outrageous" conduct is that they reported this crime to the police without fully disclosing the weaknesses in their internal controls.  The Court declines to recognize Plaintiff's legal theory, which would undercut the public policy of encouraging victims to report crimes to law enforcement officers.  In any event, the facts as alleged fall far short of any indecent, atrocious or intolerable conduct.

Leave to Amend

Ordinarily, leave to amend should be liberally granted.  However, Plaintiff, having filed an Amended Complaint, has already had two bites at the apple in this case.  For the reasons set forth above, there would be probable cause to arrest Bonacci even accepting the additional facts

17

referenced in Plaintiff's briefs as true.   It would be inequitable and futile to allow a third bite at the apple.  Accordingly, the case will be dismissed with prejudice.

An appropriate Order follows.


McVerry, S.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARIA BONACCI,                              )
           **Plaintiff,**     )
                              )
                 **v.**     )   **2:16-cv-771**
                              )
YVONNE MAHER, MICHAEL F. HAGERTY,            )
PETER F. STRACCI, JACKELYN WEIBEL,          )
KEVIN FLANIGAN,                             )
PENNSYLVANIA HEART GROUP, LTD., And         )
ALLEGHENY HEALTH NETWORK, INC.,             )
           **Defendants.**     )

## <u>ORDER OF COURT</u>

AND NOW, this 30th day of September 2016, in accordance with the foregoing

Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that

DEFENDANTS JACKELYN WEIBEL AND KEVIN FLANIGAN'S MOTION TO DISMISS

AMENDED COMPLAINT (ECF No. 6) and the MOTION TO DISMISS OF DEFENDANTS

MAHER, HAGERTY, STRACCI AND PENNSYLVANIA HEART GROUP, LTD (ECF No. 8)

are **GRANTED**. Plaintiff's Amended Complaint is **DISMISSED with prejudice**.

The clerk shall docket this case closed.

                              BY THE COURT:

                              <u>s/Terrence F. McVerry</u>
                              Senior United States District Judge

cc:     **All counsel of record**
         Via CM/ECF